**STATE of Utah, Plaintiff and Appellee,**

v.

**Wallace DAVIS, Defendant and Appellant.**

No. 940574–CA.

Court of Appeals of Utah.

Sept. 21, 1995.

G. Fred Metos (Argued), Salt Lake City, for Appellant.

Todd A. Utzinger (Argued), Assistant Attorney General, Jan Graham, State Attorney General, Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., ORME, P.J., and BENCH, J.

DAVIS, Associate Presiding Judge:

Defendant Wallace Davis pursues this interlocutory appeal from the trial court's denial of his motion to dismiss the charge of unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1994). The premise of defendant's interlocutory appeal is that he was previously subjected to a trial regarding the forfeiture of his vehicle, the basis of which was the same offense alleged in the criminal information. Therefore, if defendant were compelled to stand trial on the criminal charges, it would amount to a second punishment, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, section 12 of the Utah Constitution. We reverse.

## FACTS

The facts are not in dispute. On January 13, 1994, defendant was stopped by a West Valley City police officer for a motor vehicle

license violation. While performing a routine check, the officer discovered defendant had outstanding warrants and, therefore, placed him under arrest. As a result of the arrest, defendant's vehicle was impounded and searched. The search uncovered one-quarter gram of cocaine, which had a value of approximately $25.

Defendant's vehicle was ultimately seized and held for forfeiture pursuant to Utah Code Ann. § 58–37–13(1)(e) (1994).[1] Defendant filed a claim, seeking the vehicle's return. At the forfeiture trial held May 11, 1994, the trial court ordered the vehicle forfeited, concluding that the forfeiture was not violative of the Excessive Fines Clause[2] of the Eighth Amendment to the Federal Constitution.

The criminal information was filed on April 12, 1994. Defendant moved to dismiss the criminal charges, claiming that any further prosecution would violate the Double Jeopardy Clause of both the United States and Utah Constitutions. The trial court denied defendant's motion, concluding the forfeiture penalty is not so "disproportionate to the cost of investigating and prosecuting the defen-

dant that it constitutes 'punishment' rather than 'rough remedial justice' " and thus "does not violate the double jeopardy provisions of the United States or Utah constitutions," citing *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).[3]

Defendant filed a petition in this court requesting permission to file an interlocutory appeal based on the trial court's denial of defendant's motion to dismiss.[4] We granted defendant's petition.

## ISSUES

The narrow issues on appeal are (1) whether the forfeiture proceedings and the criminal proceedings in the case at bar are separate and, if so, (2) whether a civil in rem forfeiture proceeding constitutes a punishment which would preclude a second punishment in a criminal proceeding under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[5]

## STANDARD OF REVIEW

We are charged with reviewing the correctness of the trial court's decision to

---

1. Utah Code Ann. § 58–37–13 (1994), in pertinent part, provides:

   (1) The following are subject to forfeiture and no property right exists in them:

   . . . .

   (e) all conveyances including aircraft, vehicles, or vessels used or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, simple possession, or concealment of property described in Subsections (1)(a) and (1)(b), except that:

   . . . .

   (ii) a conveyance may not be forfeited under this section by reason of any act or omission committed or omitted without the owner's knowledge or consent. . . .

   . . . .

   (9) . . . (h) Proceedings of this section are independent of any other proceedings, whether civil or criminal, under this chapter or the laws of this state.

   *Id.*

2. The Excessive Fines Clause provides that unreasonable fines shall not be imposed. Thus, defendant argued the forfeiture of his vehicle was excessive when considered in light of his crime. Defendant did not appeal the forfeiture judgment.

3. The "blue book" value of the vehicle was between $2925 and $4600. The parties have stipulated that the cost to prosecute both the forfei-

ture case and the pending criminal case is approximately $2500.

4. The State has stipulated to defendant's request for interlocutory review.

5. Defendant also advances a state constitutional analysis, claiming the Double Jeopardy Clause of the Utah Constitution should be interpreted differently than the Fifth Amendment's Double Jeopardy Clause. Defendant claims this court "should hold that *in rem* forfeiture constitutes punishment" and that *"in rem* forfeiture constitutes a separate proceeding" for purposes of our state constitution's Double Jeopardy Clause. However, "[a]s a general rule, we will not engage in state constitutional analysis unless an argument for *different* analyses under the state and federal constitutions is briefed." *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988) (emphasis added), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992). *Accord State v. Stilling*, 770 P.2d 137, 142 n. 26 (Utah 1989). Defendant is essentially asking this court to interpret the Double Jeopardy Clause under our state constitution in the same manner as the Double Jeopardy Clause under the Federal Constitution. Hence, a state constitutional analysis is unnecessary and this court declines to undertake that task.

deny defendant's motion to dismiss. In doing so, we must determine whether the trial court correctly interpreted the Federal Constitution. Constitutional interpretation is a question of law which we review for correctness, giving no deference to the trial court's conclusion. *State v. Contrel*, 886 P.2d 107, 111 (Utah App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995). *See also Financial Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah App.1994).

## ANALYSIS

■ It is well established that the Fifth Amendment's Double Jeopardy Clause protects a defendant from three abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). It is the third abuse, multiple punishments for the same offense, which is at issue here. Although the government may impose multiple punishments against a defendant in the same proceeding, it may not do so in two or more separate proceedings. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1215 (9th Cir.1994), *amended by* 56 F.3d 41 (9th Cir.1995). Thus, we must address two questions: (1) Is the forfeiture proceeding separate from the criminal prosecution?; and, if so, (2) Does the forfeiture in this case amount to a punishment for double jeopardy purposes?

### Separate Proceedings

■ Because the Double Jeopardy Clause prohibits punishing a defendant more than once in separate proceedings, we must first determine whether the forfeiture proceedings in this case are separate from the criminal proceedings initiated against defendant.

The federal circuit courts have approached this issue differently. The Seventh and Ninth Circuits have concluded that civil forfeiture proceedings are separate from criminal proceedings. *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, ——

U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1216 (9th Cir.1994). In *$405,089.23 U.S. Currency*, the government was seeking not only criminal penalties against the defendant, but was also pursuing civil forfeiture remedies. The different actions were instituted at roughly the same time, but the forfeiture proceedings were before a different judge and were not concluded until over a year after the criminal convictions. Additionally, the forfeiture complaint was based on exactly the same offenses giving rise to the criminal prosecution. "[T]he only difference between the two proceedings was the remedy sought by the government." 33 F.3d at 1216.

The issue before the court was parallel to the issue before this court: Whether the second proceeding was a violation of the defendant's Fifth Amendment Double Jeopardy rights. In concluding that the criminal action and the forfeiture action were separate proceedings for double jeopardy purposes, the court stated:

> We fail to see how two separate actions, one civil and one criminal, instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same "proceeding." In ordinary legal parlance, such actions are often characterized as "parallel proceedings," but not as the "same proceeding." A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time.

*Id.* Moreover, although both proceedings resulted from the same violation of the law, the court stated, "We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of 'single, coordinated prosecution.'" *Id.* at 1217. *See also Torres*, 28 F.3d at 1465 ("Two trials, even if close in time, are still double jeopardy."); *United States v. Stanwood*, 872 F.Supp. 791 (D.Or.

1994); *United States v. McCaslin,* 863 F.Supp. 1299 (W.D.Wash.1994).[6]

The Second and Eleventh Circuits, on the other hand, have concluded that a civil forfeiture proceeding and a parallel criminal action can constitute a single proceeding against the defendant. *See United States v. 18755 North Bay Road, Miami,* 13 F.3d 1493, 1499 (11th Cir.1994); *United States v. Millan,* 2 F.3d 17, 20 (2nd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). In reaching its decision in *Millan,* the court relied on the following: (1) the "warrants for the civil seizures and criminal arrests were issued on the same day, by the same judge, based on the same affidavit[;]" (2) a stipulation entered into by the government and the defendants included both the property in the civil forfeiture and the property in the criminal indictment; (3) the civil complaint cross-referenced and incorporated the criminal indictment; and (4) the defendants knew at the time they agreed to the stipulation that there were criminal charges pending. 2 F.3d at 20.

The court determined that the fact that the civil forfeiture and the criminal action were filed separately was of no relevance; noting that in the federal system, civil and criminal actions were required to be filed separately. *Id.* "Therefore, courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated." *Id.* Thus, the court determined that the actions were the result of a single coordinated effort against the defendants and therefore were a single coordinated prosecution, thereby avoiding double

jeopardy issues. *But see United States v. Ursery,* 59 F.3d 568, 575 (6th Cir.1995) (stating that merely labeling something as a "'single, coordinated proceeding' ... does not make it so").

The apparent inconsistencies between the Ninth and Second Circuits' approaches may depend more upon factual and procedural differences in the cases than fundamental differences in a double jeopardy analysis. The Ninth Circuit approach is more mechanical and literal, providing a more practical and utilitarian methodology of avoiding potential double jeopardy challenges. The Second Circuit approach, on the other hand, focuses upon a more detailed analysis of the synchronization of the two proceedings, together with the defendant's involvement at various stages of those proceedings, to determine whether the defendant has been twice placed in jeopardy. Thus, parallel proceedings which are literally separate, may, under certain circumstances, not be separate for double jeopardy purposes.[7]

In the case at bar, the State has brought and tried the civil forfeiture proceeding separately from the criminal prosecution. The actions were initiated separately and the State seeks to try the actions at different times before different judges, which will result in separate judgments against defendant. Warrants were not issued on the same day by the same judge based on the same affidavit for either the civil forfeiture or the criminal action. There was no stipulation

---

**6.** The United States Supreme Court alludes to this issue in *Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In that case, the defendants were arrested and charged criminally for conspiracy to possess drugs with the intent to sell in violation of Montana law. In addition to the criminal charges, the State instituted both a civil forfeiture action to recover certain property used in defendants' drug operation and an administrative proceeding involving the assessment of a "drug tax" on the confiscated drugs. The dispositive issue in *Kurth Ranch* involved the State's attempt to impose a tax on the drugs pursuant to its new Dangerous Drug Tax Act. The Court ultimately held that the tax was punishment for double jeopardy analysis. *Id.* at ——, 114 S.Ct. at 1948. More importantly, the Court noted "the statute [does not] require us to comment on the

permissibility of 'multiple punishments' imposed in the same proceeding, since it involves separate sanctions imposed in *successive* proceedings." *Id.* at —— n. 21, 114 S.Ct. at 1947 n. 21 (citation omitted). Thus, the Court considered the criminal indictment and the tax assessment proceedings to be separate proceedings, even though they arose out of the same offense and were the result of a single coordinated effort by the government to cease the defendants' drug operation. Even though the language in *Kurth Ranch* is dicta, it is instructive for our purposes.

**7.** The Sixth Circuit recently melded the Second and Ninth Circuits' analyses to hold that separate proceedings occurred where a civil forfeiture consent judgment was entered during the pendency of criminal proceedings. *United States v. Ursery,* 59 F.3d 568, 575 (6th Cir.1995).

entered into by defendant which referenced property contained in both the civil and criminal action, and the civil forfeiture complaint did not incorporate the criminal information. The only coinciding factor between the two cases is that they are based on the same offense. This alone is insufficient to support a determination that the proceedings are the same, even under the Second Circuit's analysis. Under the Ninth Circuit's analysis, the proceedings herein were clearly separate because "[a] forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought ... and tried at the same time." *$405,089.23 U.S. Currency,* 33 F.3d at 1216. Accordingly, under either analysis, the proceedings in the case at bar are separate for double jeopardy purposes.[8]

### Punishment

Because we have concluded that the proceedings in the case at bar are separate, we must next determine whether the forfeiture of defendant's vehicle is punishment for double jeopardy purposes. The State asserts, and the trial court agreed, that the forfeiture of defendant's vehicle did not constitute punishment because the value of the vehicle was not disproportionate to the cost of prosecuting defendant. Defendant claims that when determining whether a forfeiture is punitive in nature, we should look to the forfeiture statute itself to determine whether *any* pur-

pose of the statute or result of its application is to punish the offender. Although the forfeiture statute may be deemed to serve some remedial objective, such as reimbursing the government for the cost of prosecution, defendant argues that if it cannot be interpreted as *solely* remedial, but can also be said to act as a deterrent or serve some other punitive purpose, then it must be considered punishment for double jeopardy purposes.

■ The issue of whether a civil in rem forfeiture conducted pursuant to Utah Code Ann. § 58–37–13 (1994) constitutes punishment has been recently addressed by the Utah Supreme Court. In *State v. 392 South 600 East, Nephi, Utah,* 886 P.2d 534 (1994), the court concluded that section 58–37–13(1)(i) "is punitive, at least in part."[9] *Id.* at 541. The basis for the court's decision paralleled that of *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

In *Austin,* the petitioner was indicted on four counts of violating South Dakota's drug laws and ultimately pled guilty to only one count; he was subsequently sentenced to a seven-year prison term by the state court. After the petitioner's indictment, the federal government instituted in rem proceedings in the federal district court pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7),[10] seeking for-

---

8. Not only does federal case law compel the conclusion that the proceedings in the case at bar are separate, but the forfeiture statute itself provides that "[p]roceedings of this section are independent of any other proceedings, whether civil or criminal, under this chapter or the laws of this state." Utah Code Ann. § 58–37–13(9)(h) (1994). *See also* Utah Code Ann. § 76–3–501(6)(h) (1994) (providing vehicle is subject to forfeiture when used in the commission of a felony where a firearm is used and that any forfeiture proceedings are "independent of any other proceedings, whether civil or criminal"); *Id.* § 58–37–8(8)(a) ("Any penalty imposed for [the illegal possession of a controlled substance] is in addition to, and not in lieu of, any civil or administrative penalty or sanction authorized by law.").

9. Utah Code Ann. § 58–37–13(1)(i) (1994) provides for the forfeiture of

all warehousing, housing, and storage facilities, or interest in real property of any kind used, or intended for use, in producing, cultivating, warehousing, storing, protecting, or

manufacturing any controlled substances in violation of this chapter....

*Id.*

10. 21 U.S.C.A. § 881(a) provides for the forfeiture of:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]....

....

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment....

21 U.S.C.A. § 881 (West Supp.1995). It should be noted that subsection (4) is essentially identical to Utah Code Ann. § 58–37–13(1)(e) (1994), which is at issue in this case.

feiture of the petitioner's mobile home and auto body shop. In granting summary judgment in favor of the government, the district court rejected the petitioner's Eighth Amendment excessive fines argument. The summary judgment was upheld on appeal to the Eighth Circuit Court of Appeals. The case was then taken before the United States Supreme Court.

In concluding that a forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (a)(7) amounted to punishment, the Supreme Court focused on: (1) the historical significance of the fact that civil in rem forfeitures were always understood to be punitive in nature; (2) the innocent owner defense afforded the property's owner under section 881(a)(4) and (a)(7); (3) the fact that forfeitures under section 881 are strictly associated with drug violations; and (4) the legislative history of section 881.[11] *Austin*, — U.S. at — – —, 113 S.Ct. at 2810–11. The government's arguments that the statute was remedial in nature because it "remove[s] the 'instruments' of the drug trade 'thereby protecting the community from the threat of continued drug dealing,' " *id.* at —, 113 S.Ct. at 2811 (quoting Brief for United States at 32), and because it reimburses the government for the expense of law enforcement and "societal problems such as urban blight, drug addiction, and other health concerns resulting from the drug trade" were clearly rejected. *Id.* The Court reasoned the petitioner's mobile home and auto body shop could hardly be considered instruments of the drug trade and " '[t]here is nothing even remotely criminal in possessing' " the properties at issue. *Id.* (citation omitted). Furthermore, because " 'forfeiture of property ... [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law[,]' " *id.* at 2812 (quoting *United States v. Ward*, 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980)), the government's claim that forfeitures under section 881 were a " 'reasonable form of liquidated damages' " was also rejected, *id.* at —, 113 S.Ct. at 2811 (quoting *One Lot*

*Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493 (1972)).

Even if section 881(a)(4) and (a)(7) were remedial in part, the Court opined, they would still conclude that the forfeiture was punitive because " 'a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Id.* at —, 113 S.Ct. at 2812 (quoting *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902 (1989) (emphasis added)). Thus, even if a statute is remedial in part, if it has *any* punitive attributes, constitutional protections attach. *Id.* Because the Court found that forfeiture pursuant to section 881(a)(4) and (a)(7) amounted to punishment, the constraints of the Eighth Amendment's Excessive Fines Clause applied.

The State attempts to distinguish the holding in *Austin* on two grounds: (1) *Austin* misinterprets and therefore misapplies the test for punishment set forth in *Halper* and extracts a "rule" from *Halper* which is merely dicta; and (2) *Austin* applies only in the Eighth Amendment context. However, the State's reasoning is flawed for several reasons.

The State asks this court to ignore the test for punishment announced in *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902, and underscored in *Austin*, — U.S. at —, 113 S.Ct. at 2812, claiming that the language is merely dicta. Although there may have been some confusion created by the holding in *Halper*, *Austin* has clarified any misunderstanding.

In *Halper*, the defendant was criminally convicted of violating the federal criminal false-claims statute when he submitted sixty-five false claims for Medicare benefits reimbursement, amounting to $585. Based on the facts established by the criminal conviction, the government attempted to collect a civil penalty for the crime pursuant to the False Claims Act (the Act), which provided

---

**11.** Congress identified forfeiture as " 'a powerful deterrent' " and stated that " 'the traditional criminal sanctions of fines and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs.' " *Austin*, — U.S. at —, 113 S.Ct. at 2811 (quoting S.Rep. No. 225 at 191, 195 (1983)).

for a civil penalty in the amount of $2000 per false claim, for a total of $130,000, plus the costs of prosecution and twice the amount of the actual damages. The United States District Court for the Southern District of New York, however, concluded that the civil penalty under the Act would amount to a second punishment, considering the disproportionality of the penalty to the actual costs to the government, and held it violative of the Double Jeopardy Clause. On appeal, the United States Supreme Court addressed the issue of "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." *Halper*, 490 U.S. at 436, 109 S.Ct. at 1895.

The Court declined to base its decision on the statutory language of the Act, concluding that a statutory construction analysis "is not well suited to the context of the 'humane interests' safeguarded by the Double Jeopardy Clause's proscription of multiple punishments." *Id.* at 447, 109 S.Ct. at 1901. Instead, "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." [12] *Id.* at 448, 109 S.Ct. at 1901.

A definition of punishment was set forth by the Court which may have led to the existing confusion:

> [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. [Citation omitted.] We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a *deterrent or retribution.*

*Id.* at 448–49, 109 S.Ct. at 1902. The State correctly observes that the above quoted sentences seem to conflict with each other. In

the first instance, the Court states that a civil sanction is punishment if it is not *solely* remedial, but is *also* retributive or deterring in nature. The second sentence states that if a civil sanction cannot be identified as remedial, but *only* as deterring or retributive in nature, then it is punishment. The State claims that the difference between the two is of great importance, and that the second sentence is the "true" test for determining whether a civil sanction is punishment.

We need not resolve this issue because *Austin* clarifies any potential confusion created by *Halper* when it, again, defines punishment for a constitutional protection analysis by focusing on the first sentence of the *Halper* definition. *Austin* states that

> [w]e need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving *in part* to punish. We said in *Halper* that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather' can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902.

*Austin*, —— U.S. at ——, 113 S.Ct. at 2806 (emphasis added). Furthermore, because the statute in *Austin* could not be fairly assessed as serving *solely* a remedial function, it was considered punishment for constitutional purposes. *Id.* at ——, 113 S.Ct. at 2812. Thus, *Austin* distinctly emphasizes that even if criminal fines, civil penalties, or civil forfeitures have remedial purposes, if they have *any* punitive objectives, they are subject to constitutional constraints. *Id.*

*Austin*'s interpretation of punishment flows logically when considered in the double jeopardy context. As the Tenth Circuit Court of Appeals stated:

> [T]hat a sanction should be considered punishment if it is not solely remedial is supported by common sense. That is to

---

12. The Court cautioned, however, that the analysis was not from the defendant's perspective because "for the defendant even remedial sanctions

carry the sting of punishment." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901 n. 7.

say, if a particular remedial sanction can only be understood as also serving punitive goals, then the person subjected to the sanction has been punished despite the fact that the sanction is also remedial. *To conclude otherwise effectively invalidates the Double Jeopardy Clause by allowing multiple punishments for the same conduct merely because the punishments also serve remedial purposes.*

*United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994) (emphasis added).

Accordingly, we reject the State's contention that *Austin* misinterpreted the test for punishment set forth in *Halper.*

The State also claims the analysis in *Austin* does not apply to the Fifth Amendment Double Jeopardy Clause because the holding defines punishment for Eighth Amendment Excessive Fines purposes only. We disagree. In determining whether the Eighth Amendment protections applied, the *Austin* court undertook a punishment analysis *first,* and only then did it determine that Eighth Amendment protections applied. Furthermore, *Austin* used the "solely remedial" portion of the test employed by *Halper,* a double jeopardy case, in determining whether section 881 constituted punishment for Eighth Amendment purposes. *Austin,* —— U.S. at ——, 113 S.Ct. at 2812. Thus, the same analysis for punishment is undertaken whether a defendant is seeking protection under the Eighth Amendment's Excessive Fines Clause or the Fifth Amendment's Double Jeopardy Clause. *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1219 n. 8 (9th Cir.1994) (stating "the answer to the question whether a particular forfeiture constitutes punishment will always be the same for purposes of the Double Jeopardy Clause and the Eighth Amendment"); *cf. Department of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (stating civil penalties *and* civil forfeitures are "subject to constitutional constraints").

Notwithstanding the State's position that the holding in *Austin* is not applicable to the case at hand, the Utah Supreme Court was "persuaded that the analysis in *Austin* applies equally to section 58–37–13(1)(i)." *392*

*South 600 East, Nephi, Utah,* 886 P.2d at 540. In *392 South 600 East,* the defendant was arrested after he purchased marijuana at his own residence from an informant for the Juab County Sheriff's office, and the State subsequently instituted forfeiture proceedings against the defendant's residence and real property under section 58–37–13(1)(i). The defendant resisted, claiming that the forfeiture violated the Eighth Amendment's Excessive Fines Clause.

After explaining *Austin* in detail, the court applied the same analysis to the issue before it. The Utah Supreme Court reiterated that forfeiture statutes in general have always been punitive in nature, and recognized that, analogous to section 881(a)(4) and (a)(7), section 58–37–13(1)(i) has an innocent-owner defense. Therefore, based on these two factors and the fact that the United States Supreme Court rejected the claim "that forfeiture is a reasonable liquidated compensation to the state," the court concluded that section 58–37–13(1)(i) "is punitive, at least in part." *Id.* at 541. Because forfeiting property pursuant to section 58–37–13(1)(i) is considered a punishment, the court held that the Eighth Amendment's Excessive Fines Clause applied. *Id.*

■ Although the forfeiture proceedings in *392 South 600 East* were brought pursuant to subsection (1)(i) of section 58–37–13, the same analysis is applicable to subsection (1)(e), which is at issue here. Section 58–37–13(1)(e) provides for the forfeiture of a conveyance when it is used in connection with illegal controlled substances. Thus, subsection (1)(e) is a civil in rem forfeiture statute which has historically been understood to constitute punishment. *See State v. One 1983 Pontiac (Joe Arave),* 717 P.2d 1338, 1340 (Utah 1986) ("We affirm that the major thrust of [Utah Code Ann. § 58–37–13] is to strike at those involved in the trafficking of drugs"); *State v. $9,199.00 U.S. Currency,* 791 P.2d 213, 215 (Utah App.1990) (same). Like subsection (1)(i), subsection (1)(e) contains an innocent owner defense. Thus, because the claim that forfeiture constitutes nothing more than liquidated damages to reimburse the state for the cost of prosecution has already been repudiated, it is clear

that a forfeiture under section 58–37–13(1)(e) constitutes punishment.[13] Furthermore, even though *392 South 600 East* was an Eighth Amendment Excessive Fines case, with respect to determining whether forfeiture constitutes punishment, we hold that it makes no difference whether the analysis applies to the Fifth or Eighth Amendment, even though the end result may be different because of other aspects of a given case.[14] Accordingly, the constitutional protections afforded by the Fifth Amendment's Double Jeopardy Clause apply.[15]

The State claims that the forfeiture in this case is constitutional because the value of the vehicle (between $2925 and $4600) was rationally related to the cost to prosecute defendant in both the forfeiture action and the criminal proceedings. Because the value of the forfeiture is not "so disproportionate to the damages caused," *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903, the State asserts it should not constitute punishment. This approach was explicitly rejected in *Austin*, which recognized that *Halper* "focused on whether 'the sanction as applied in the individual case serves the goals of punishment,'" but stated "[i]n this case, however, it makes sense to focus on §§ 881(a)(4) and (a)(7) as a whole." *Austin*, —— U.S. at —— n. 14, 113

S.Ct. at 2812 n. 14 (citation omitted). *Austin* distinguished the civil sanction at issue in *Halper* from the forfeiture issue before it:

> *Halper* involved a small, fixed penalty provision, which "in the ordinary case ... can be said to do no more than make the Government whole." [Citation omitted.] The value of conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7), on the other hand, can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.

*Id.* Thus, when addressing civil forfeitures, *Austin* concludes that the cost of prosecution compared to the value of the forfeiture is irrelevant.

We follow the rationale set out in *Austin* and reject the "disproportionality" test as advanced by the State. As identified in *Austin*, utilizing a "disproportionality" test when addressing forfeiture creates inconsistent results and further complicates criminal proceedings. The public interest is best served when a potential defendant is put on notice of what his or her conceivable punishment is for his or her crime. Furthermore, by looking solely to the purpose behind the forfeiture statute as opposed to comparing the cost of

13. We note that this holding is limited to the narrow issue before us: whether the forfeiture of a conveyance pursuant to § 58–37–13(1)(e) amounts to punishment for double jeopardy purposes. We do not reach the issue of whether the forfeiture of property of a different character, such as criminal proceeds, or of a privilege, such as operating a motor vehicle, constitutes punishment for double jeopardy purposes.

14. As the Ninth Circuit properly stated:

> To make it clear, we hold only that because the method of determining whether the forfeiture constitutes punishment is identical, the answer to the question whether a particular forfeiture constitutes punishment will always be the same for purposes of the Double Jeopardy Clause and the Eighth Amendment. [However], [w]hether a violation of either clause exists involves factors that are different with respect to each clause.

*U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1219 n. 8 (9th Cir.1994).

15. Most courts from other jurisdictions hold that the *Austin* analysis applies in the Fifth Amendment context. *See People v. Towns*, 269 Ill. App.3d 907, 207 Ill.Dec. 279, 646 N.E.2d 1366, 1370 (1995) and cases cited therein; *see also State v. 1979 Cadillac DeVille*, 632 So.2d 1221, 1228 (La.Ct.App. 2 Cir.), *writ granted*, 642 So.2d 1302 (La.1994) ("Although not specifically deciding a double jeopardy claim in *Austin*, the Court's reasoning makes it clear that double jeopardy applies in [forfeiture cases]"). *Contra State v. Johnson*, 632 So.2d 817, 818 (La.Ct.App. 4th Cir.), *writ granted*, 642 So.2d 1302 (La.1994) (rejecting *Austin* analysis for *Halper* "disproportionate" test—civil forfeiture not so disproportionate to government's damages to constitute punishment). *See also Fant v. State*, 881 S.W.2d 830, 834 (Tex.Ct.App. 14th Dist.1994) (holding prior civil forfeiture constitutes punishment under Double Jeopardy Clause so as to prohibit subsequent criminal proceedings), rejecting *Johnson v. State*, 882 S.W.2d 17, 20 (Tex.Ct.App. 1st Dist.1994) (holding forfeiture did not implicate double jeopardy because it was not " 'overwhelmingly disproportionate to the damages appellant caused' ") (citation omitted); *State v. Clark*, 124 Wash.2d 90, 875 P.2d 613, 617 (1994) (stating "the *Austin* Court's reasoning for deeming forfeiture 'punishment' for the purpose of Eighth Amendment analysis extends to the Fifth Amendment as well").

prosecution to the value of the forfeited conveyance on a case by case basis, the necessity of extensive fact finding is eliminated. The interests of the public are also served by analyzing the nature of the statute to determine whether it is solely remedial or partly punitive as well as providing a utilitarian framework within which to pursue criminal defendants, eliminating the speculative nature of the "disproportionality" test.

Moreover, the disproportionality test would frequently result in an unacceptable inequality of treatment. Forfeiture of an essentially valueless automobile would not constitute punishment because its value would not exceed the costs of prosecution; forfeiture of a valuable automobile would constitute punishment in the many situations where the vehicle's value greatly exceeded the cost of prosecution. But the poor person's loss of his only "wheels" may actually work much more of a hardship than the wealthy person's loss of a luxury automobile. Surely the availability of important constitutional protections cannot turn on such vagaries of economics. *Cf. Austin,* ___ U.S. at ___ n. 14, 113 S.Ct. at 2812 n. 14 ("[T]he value of the conveyances ... forfeitable ... can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.").

## CONCLUSION

■ We hold that the concluded forfeiture action and the pending criminal proceeding are separate proceedings for double jeopardy purposes and that a forfeiture pursuant to section 58–37–13 constitutes punishment. By pursuing the criminal proceedings against defendant, the State is attempting to punish defendant a second time for an offense for which he has already been punished, the very abuse that the Double Jeopardy Clause protects against. Therefore, we conclude that the subsequent criminal proceeding is barred by the Double Jeopardy Clause of the Fifth Amendment. Accordingly, the trial court's

order denying defendant's motion to dismiss is reversed.[16]

ORME, P.J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. The main opinion errs by concluding, as a matter of law, that criminal prosecution of defendant would violate double jeopardy because defendant has already been subjected to the civil forfeiture provision of Utah Code Ann. § 58–37–13 (1994).

The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" Historically, this provision was interpreted to apply in cases where a person's life was at stake or to "offences which, in former ages, were punishable by dismemberment, and as intending to comprise the crimes denominated in the law, felonies." *People v. Goodwin,* 18 Johns. 187, 201 (N.Y.1820). Most courts now accept the notion that, despite the narrow constitutional language, double jeopardy bars multiple *criminal* prosecutions and punishments for the same *criminal* offense regardless of the severity of the offense and consequent punishment. *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975).

The main opinion, however, goes far beyond what the United States Supreme Court has ever said about double jeopardy and holds that a civil sanction is subject to double jeopardy analysis if it is not solely remedial. The main opinion states that if the civil sanction has any punitive aspects, no matter how minor, double jeopardy applies. The main opinion misreads the Constitution and misapplies the holding of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

In *Halper,* the Supreme Court expressly held as follows:

We therefore hold that under the Double Jeopardy Clause a defendant who already

---

**16.** We find nothing inherently unconstitutional about forfeiture and stress that double jeopardy is implicated only when remedies for criminal activity are sought in separate proceedings. To the extent that Utah Code Ann. § 58–37–13(9)(h) (1994) may or may not impede the pursuit of remedies in the same actual proceeding, that is a matter that must be addressed by our legislature.

has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added). Therefore, if the civil sanction can be characterized as serving at least some remedial purpose, double jeopardy does not apply. *Id.; accord Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (holding that double jeopardy applies only if "the sanction may not be fairly characterized as remedial, but only as a deterrent or retribution").[1]

In the present case, section 58–37–13 provides for forfeiture, under certain enumerated circumstances, of property used to manufacture or transport controlled substances. This section is at least partially remedial in nature. In *State v. 392 South 600 East, Nephi, Utah,* 886 P.2d 534, 541 (Utah 1994), the Utah Supreme Court stated that this section is also "punitive, at least in part." In so stating, the supreme court recognized that this section serves at least some remedial purpose. *Id.* (" 'forfeiture statutes historically have been understood as serving not simply remedial goals but also those of punishment and deterrence.' ") (quoting *Austin v. United States,* —— U.S. ——, n. 14, 113 S.Ct. 2801, 2803 n. 14, 125 L.Ed.2d 488 (1993)).

Under *Halper*'s Fifth Amendment analysis, double jeopardy applies only when the statute in question is solely punitive in nature. *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902. By contrast, under Eighth Amendment analysis, the Excessive Fines Clause applies if the statute in question is merely partly punitive in nature. *Austin,* —— U.S. at ——, 113 S.Ct. at 2806 (holding that "[w]e need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as

serving in part to punish.") Therefore, the main opinion errs by concluding that double jeopardy applies to civil forfeiture under section 58–37–13. The main opinion compounds this error by importing Eighth Amendment principles into a Fifth Amendment analysis.

The Excessive Fines Clause of the Eighth Amendment is the protection available to criminal defendants against unreasonable civil forfeiture. *See Austin,* —— U.S. at ——, 113 S.Ct. at 2803 (holding that Excessive Fines Clause applies to forfeitures of property used to manufacture or transport illegal drugs); *392 South 600 East, Nephi, Utah,* 886 P.2d at 540–41 (same). Under the Eighth Amendment, there is no bright line test for determining when a forfeiture is constitutionally excessive. *See Id.* at 541. Instead, trial courts are granted appropriate discretion to determine, under the specific facts of each case, when a civil forfeiture becomes constitutionally excessive. *Id.*

Even if the proportionality analysis under the Eighth Amendment could be fairly imported into a double jeopardy case, the main opinion fails to afford the trial court the necessary discretion to decide the case. The United States Supreme Court has recognized the imprecise task of determining the punitive character of a civil sanction:

> We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain.... Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed ... the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding rea-

---

1. Justice O'Connor, writing separately in *Kurth Ranch,* echoed the principle of *Halper:* "Our double jeopardy cases make clear that a civil sanction will be considered punishment to the extent that it serves only the purposes of retribution and deterrence, as opposed to furthering any nonpunitive objective." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1953.

sonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-damages provisions can be said to do no more than make Government whole.

*Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. The Court indicated that it would continue to look with favor upon such reasonable liquidated damages clauses and "fixed-penalty-plus-damages" provisions. The Court noted that it was the rare case where a fixed-penalty provision subjects an offender to a sanction overwhelmingly disproportionate to the damages. *Id.*

> The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.,* 490 U.S. at 450, 109 S.Ct. at 1902. Because of the imprecise nature of this determination, the Court left individual determinations of when civil sanctions constitute punishment within the sound discretion of the trial court.

> We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.

*Id.*

In the present case, the trial court concluded that

> the penalty suffered by the defendant in the forfeiture proceeding did not exceed what could reasonably be regarded as the equivalent compensation, for the state[']s loss, and the penalty is not entirely unrelated to the actual damages suffered. The forfeiture penalty assessed in the forfeiture action was not so disproportionate to the cost of investigating and prosecuting the defendant that it constitutes "punish-

ment" rather than "rough remedial justice."

The trial court therefore held that the seizure of defendant's vehicle did not constitute "punishment" in the constitutional sense. This determination by the trial court is entitled to significant deference. *See Id.,* 490 U.S. at 449–50, 109 S.Ct. at 1902.

Recently, the Utah Supreme Court addressed the deference due a trial court in cases where the court is called upon to apply facts to the law. In *State v. Pena,* 869 P.2d 932, 938 (Utah 1994), the supreme court held that trial courts are entitled to deference when applying facts to controlling law. Unless the trial court crosses an established legal boundary, we should not upset the court's determination of whether, under the specific facts of a given case, the value of property seized under section 58–37–13 is so disproportionate to the cost of investigation and prosecution to constitute "punishment." *Id.*

The trial court in the instant case did not abuse its discretion in determining that the State's seizure of defendant's vehicle did not constitute "punishment." Therefore, even if double jeopardy applies in this case, the main opinion errs by substituting its judgment for that of the trial court.

## CONCLUSION

Section 58–37–13 is not, as a matter of law, solely punitive. The Double Jeopardy Clause therefore should not even come into play. Because the protections of double jeopardy are not available to a defendant under section 58–37–13, a defendant's redress is limited to the Excessive Fines Clause of the Eighth Amendment. In any event, the trial court did not abuse its discretion by determining that the seizure of defendant's vehicle was roughly equivalent to the cost of prosecution and therefore was not "punishment" in the constitutional sense.

I would therefore affirm the trial court's denial of defendant's motion to dismiss the criminal charge brought against him.