**CITY OF OREM, Plaintiff and Respondent,**

v.

**Kenneth L. CRANDALL, Defendant and Appellant.**

No. 870071–CA.

Court of Appeals of Utah.

Sept. 2, 1988.

James G. Clark (argued), Jeffery C. Peatross (argued), Provo, for defendant and appellant.

Stanford C. Sainsbury (argued), Orem, for plaintiff and respondent.

Before BENCH, BILLINGS and HANSON *, JJ.

## OPINION

HANSON, District Judge:

Defendant was convicted in a bench trial of driving under the influence of alcohol, a Class B misdemeanor in violation of Utah Code Ann. § 41–6–44 (1986). Defendant appeals, asserting four bases as error. First, defendant claims that the criminal trial constituted double jeopardy because of a prior administrative hearing involving defendant's driver's license. Second, defendant alleges that the trial court was collaterally estopped from hearing the case because of the prior administrative hearing which was resolved in defendant's favor. Third, defendant contends that there was insufficient evidence presented at trial to support a conviction; specifically, defendant questions the accuracy of the intoxilyzer. Finally, defendant asserts that Utah's statutory scheme providing for a conviction upon proof of a blood-alcohol level of .08% is unconstitutional as a conclusive presumption. We affirm.

During the afternoon of September 4, 1986, defendant was properly stopped by Officer Hendrickson of the Orem City Police Department for a traffic violation. Officer Hendrickson noticed the odor of alcohol about defendant's person, and asked him to step out of his car to perform field sobriety tests. Following the field sobriety tests, which defendant performed poorly, the defendant was arrested and taken to the Orem City Police Station. At the police station, defendant submitted to an intoxilyzer test which rendered a result of .09% blood-alcohol content. Defendant requested a hearing pursuant to Utah Code Ann. § 41–2–19.6 (1986) before the Utah State Department of Driver License Services ("DDLS") to determine whether or not DDLS would take action to suspend or revoke his driver's license.

Both defendant and Officer Hendrickson appeared at the hearing which was held before a hearing examiner according to the guidelines delineated by this Court in *Kehl v. Schwendiman*, 735 P.2d 413, 415 (Utah Ct.App.1987). No one represented the City of Orem, and the hearing involved no issues in which the City had a direct role. Following the hearing, the DDLS hearing examiner determined to take no action regarding defendant's driver's license, at least pending the determination of the trial court on the criminal charges of driving under the influence of alcohol. DDLS sent a letter to defendant on November 14, 1983 which indicated that DDLS took no action with regard to defendant's driving privileges, and stated no basis for the determination not to take action.

At the time of the trial, Trooper Gary Taylor, a breath test technician with the Utah Highway Patrol, testified as an expert witness with respect to the intoxilyzer. Trooper Taylor indicated that the intoxilyzer machine has an analytical error of plus or minus .01%. Trooper Taylor further testified that, since defendant was simultaneously burning off alcohol, defendant's consumption of six ounces of beer immediately before his arrest would have had no appreciable effect on his blood-alcohol content at the time of the test. Trooper Taylor further testified that the intoxilyzer conversion ratio used to calculate blood-alcohol content is substantially too low, and that the lower ratio currently in use is inaccurate in defendant's favor and would show defendant's blood-alcohol content as being lower than it was in actuality. Trooper Taylor further testified concerning the conversion ratio, indicating that it encompasses the vast majority of all individuals, and that there are only two reported, isolated and undocumented cases where a person was found to be outside the standard conversion ratio. Trooper Taylor further testified that the officers who operate intoxilyzer machines are trained professionals, and that the machines themselves have error-proofing devices which help insure

---

* Timothy R. Hanson, Judge, Third Judicial District Court, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

their accuracy. Finally, Trooper Taylor testified that the numerical readout of the intoxilyzer machine is always rounded down by the machine to two decimal places, again giving the defendant a potential benefit of the doubt on the reading produced by the machine.

The trial court determined that the defendant would be guilty if the evidence showed that he was driving under the influence of alcohol to a degree so that he was unable to safely operate his vehicle, or if the evidence showed that the defendant was driving his vehicle with a blood-alcohol content of .08% or greater. The court determined that the evidence showed defendant was guilty of the crime charged in that he was driving his automobile with a blood-alcohol content of .08% or greater.

## DOUBLE JEOPARDY

Defendant first raises the issue of double jeopardy, claiming that the criminal trial conviction from which he appeals constitutes double jeopardy because the same issues were previously examined at the driver's license suspension hearing. Defendant argues that even though the driver's license suspension hearing was not criminal in nature, the underlying principles of double jeopardy attach because the same statute was involved, and the same or similar witnesses and evidence were heard and received. Defendant candidly concedes, however, that an administrative hearing, such as a driver's license hearing which is civil in nature, does not generally bring into play the principles of double jeopardy.

The Utah Supreme Court, in *Ballard v. State Motor Vehicle Division*, 595 P.2d 1302, 1305 (Utah 1979), held that the statutory driver's license revocation procedures are "civil" or "administrative" and not "criminal." The Court reasoned that the revocation hearing was a separate and distinct hearing from the criminal action of driving under the influence and involved a different burden of proof. Additionally, we note that DDLS's only remedy in the driver's license hearing is the suspension of defendant's driver's license. No possibility of criminal sanction is present in the driver's license hearing, either in the form of a fine or incarceration, as is the case in a criminal hearing. Many civil cases involve issues that are the same or similar to a criminal proceeding. By way of example, in a personal injury case where a civil defendant has been drinking and the drinking is the basis of the claimed negligence, the issues are the same or similar as in a DUI case. Defendant does not suggest that double jeopardy would apply in situations as represented by the example, and likewise it cannot apply to the circumstances presently before the court.

Before double jeopardy can attach, the prior proceeding upon which the double jeopardy claim is based must also be criminal in nature. As a driver's license hearing is clearly civil, double jeopardy does not apply, and the defendant's claim that the trial court erred by not dismissing the driving under the influence charges on that basis is without merit.

## COLLATERAL ESTOPPEL

The defendant further claims error on the basis that the City of Orem is estopped from proceeding with the criminal action because of the decision at the driver's license hearing not to suspend defendant's driver's license. A cursory review of the elements of the principle of collateral estoppel shows this argument to be unpersuasive. The Utah Supreme Court set forth the elements of collateral estoppel in *Searle Brothers v. Searle*, 588 P.2d 689, 691 (Utah 1978) as follows: 1. The issue decided in the prior adjudication must be identical to the one presented in the action in question; 2. There must be a final judgment on the merits; 3. The party against whom the plea is asserted must be a party or in privity with a party to the prior adjudication; and 4. The issue in the first action must be completely, fully and fairly litigated. Under *Searle*, for collateral estoppel to apply, the party against whom the estoppel is asserted, in this case the City of Orem, must be a party in the prior hearing. At the driver's license hearing, the governmental entity involved is an

agency of the State of Utah, not the City of Orem. The fact that both may be considered "government" in general terms does not change the separate legal identity, nor provide any reasonable basis for abandoning the traditional elements of collateral estoppel established in *Searle*.

This court can find no error in the refusal of the trial court to grant defendant's Motion to Dismiss the criminal charges on the basis of collateral estoppel.

## INSUFFICIENCY OF THE EVIDENCE

■ Defendant suggests a number of reasons why the evidence was insufficient to support the trial court's finding that the defendant's blood-alcohol content was .08% or greater. Defendant first claims that, because of the potential margin of error in the intoxilyzer test, if he is allowed the benefit of the error, the test would show less than .08% blood-alcohol content. The test conducted showed a result of .09%, it was taken a short period of time after the arrest and defendant was given the benefit of the doubt at .09%. There was credible evidence that the trial court could believe that would support a finding that the consumption of beer immediately before the arrest would make no appreciable difference in the test results. This is particularly true when one considers that defendant's last episode of alcohol ingestion was at the end of a period of drinking during the course of the day.

Defendant suggests that he would fall outside the normal conversion ratios as testified to by Trooper Taylor, and, therefore, the test result was invalid. This Court, however, believes Trooper Taylor's testimony shows that such a possibility is highly unlikely. There is nothing in the record before this Court that would suggest that defendant has anything other than a normal conversion ratio. The totality of Trooper Taylor's evidence shows that the intoxilyzer gave defendant every benefit of the doubt, and defendant still was above the statutory limit of .08%. We, therefore, hold that the trial court had sufficient evidence before it upon which it could find that defendant's blood-alcohol content at the time of the violation was .08% or higher.

## CONSTITUTIONALITY OF SECTION 41–6–44(1)

Defendant attacks section 41–6–44(1), alleging that it creates a conclusive presumption. A reading of the statute shows that the language pertaining to .08% is merely conduct that is prohibited, and raises no presumption, conclusive or otherwise. Section 41–6–44(1), in pertinent part, reads as follows:

> It is unlawful and punishable as provided in this section for any person to operate or be in actual physical control of a vehicle within this state if the person has a blood or breath alcohol content of .08% or greater by weight ... *or* if the person is under the influence of alcohol ... to a degree which renders the person incapable of safely operating a vehicle.

(Emphasis added.)

■ The statute does not suggest that if a person has a blood-alcohol content of .08% or greater, that he is presumed guilty of driving under the influence of alcohol. To the contrary, the statute provides for a violation of the law in two separate ways. The first is that the legislature has determined that it is a violation of the law to drive a vehicle with a blood-alcohol content of .08% or greater. That is merely prohibited conduct, regardless of what effect that blood-alcohol level may have on the person actually operating the vehicle and his ability to operate it safely. In addition, the statute provides that regardless of the blood-alcohol content of the driver of the vehicle, if that driver's ability to operate the vehicle safely is impaired because of alcohol ingestion, that conduct is a separate violation. The issue of whether or not the legislature's determination that driving with a blood-alcohol level of .08% or greater is constitutionally sound is not before us.

The Oregon Court of Appeals considered the constitutionality of a statute similar to Utah's in *State v. Clark*, 35 Or.App. 851, 583 P.2d 1142, 1145 (1978). Under the Oregon statute, an individual could be found

guilty of driving while under the influence of intoxicants if he has a blood-alcohol level of .10% or greater, or if he is under the influence of intoxicating liquor or a dangerous drug or narcotic drug. *Id.* 583 P.2d at 1143. The defendant in *Clark,* as in this case, claimed the provision in the statute prohibiting driving with a .10% blood-alcohol level was unconstitutional because it created an impermissible conclusive presumption. *Id.* 583 P.2d at 1144.

The Oregon court rejected that argument and found that driving with a blood-alcohol level of .10% or greater is an alternative statutory definition of the offense, not a conclusive presumption. *Id.* 583 P.2d at 1145. The court noted that the gravamen of the offense prohibited by the statute is driving with a certain blood-alcohol level which "the legislature has seen fit to forbid ... without more." *Id.* In this regard, the court found that the evidence tending to establish the blood-alcohol level and the defendant's right to attack this evidence crucial to its determination that the statute did not create a conclusive presumption. *Id.*

Similarly, in *Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121, 127 (1983), the Arizona Supreme Court found that an Arizona statute which prohibited driving with a .10% or more blood-alcohol level did not create an impermissible presumption because the defendant could attack the accuracy of the test on any relevant ground, including inherent margin of error. Thus, the court reasoned, "[c]onviction is possible only when the jury finds beyond a reasonable doubt that the defendant's blood-alcohol level at the time of driving or controlling the vehicle was .10% or

more, not simply on the basis that the test results were .10% or greater." *Id.*

Like the statutes in both *Clark* and *Fuenning,* section 41–6–44(1) prohibits driving or controlling a vehicle with a specified blood-alcohol level. The Utah legislature, in keeping with other jurisdictions, has "seen fit to forbid this act ... without more." *Clark,* 583 P.2d at 1145. Although the statutorily prescribed level in Utah is .08% rather than .10%, we do not consider the difference in the level prescribed relevant to our determination of the statute's constitutionality on the issue of conclusive presumption. The Utah statute does not create a conclusive presumption because, like the statutes in question in *Clark* and *Fuenning,* section 41–6–44(1) allows the defendant to challenge the accuracy of the test on any relevant ground. *See* Utah Code Ann. § 41–6–44.3 (1987). The Utah statute merely prohibits driving or controlling a vehicle with a blood-alcohol level of .08% or more, not driving or controlling a vehicle when a test shows a level of .08% or more. *See Fuenning,* 680 P.2d at 127.

Accordingly, we hold that section 41–6–44(1) does not create a conclusive presumption, and is not, therefore, unconstitutional. The judgment and conviction of defendant is affirmed, and the case is remanded to the circuit court for imposition of sentence.

BENCH and BILLINGS, JJ., concur.