STATE of Utah, Plaintiff and Appellee,

v.

Bret Ray ARBON, and Kimberly Sue Milligan, Defendants and Appellants.

No. 950277–CA.

Court of Appeals of Utah.

Jan. 5, 1996.

 

Jay D. Edmonds, Salt Lake City, and John Blair Hutchison, Ogden, for Appellants.

Todd A. Utzinger and Jan Graham, Salt Lake City, for Appellee.

Before DAVIS, BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendants Bret R. Arbon and Kimberly S. Milligan bring this interlocutory appeal to challenge the trial court's denial of their motions to dismiss criminal prosecutions against them for driving under the influence (DUI) in violation of Utah Code Ann. § 41–6–44 (1993). We affirm.

## FACTS

In separate instances, defendants were arrested for DUI. Both failed chemical tests given after arrest, triggering the application of Utah Code Ann. § 53–3–223 (1994), under which their driver's licenses were suspended by the Driver License Division in administrative proceedings. Later, criminal charges for DUI were filed against each defendant. Defendants sought dismissal of their respective cases, arguing they had already been "punished" by having their licenses suspended. Thus, they asserted, the Double Jeopardy Clause of the Fifth Amendment barred further proceedings that could result in additional punishment.

The trial court rejected defendants' arguments and denied their respective motions to dismiss their cases. Defendants each brought an interlocutory appeal challenging the denial of their motions. This court consolidated their appeals.

## ISSUE

The sole issue on appeal is whether, under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, an administrative driver's license suspension after a DUI arrest is "punishment" that precludes a second punishment in a criminal proceeding. This is a legal question of constitutional interpretation; thus, we

review the trial court's conclusion for correctness. *See State v. Davis,* 903 P.2d 940, 943 (Utah App.1995).

## ANALYSIS

■ The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This mandate extends to the states via the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), and forbids, among other things, multiple punishments imposed in separate proceedings for the same offense, *State v. Davis,* 903 P.2d 940, 943 (Utah App.1995). We do not address the "separate proceedings" and "same offense" criteria, but consider whether the administrative suspension is "punishment" under the Double Jeopardy Clause.[1] If it is not punishment, the Double Jeopardy Clause is not implicated and our inquiry ends.

In *City of Orem v. Crandall,* 760 P.2d 920 (Utah App.1988), we held the administrative license suspension scheme at issue did not impose punishment. *Id.* at 922. At that time, we used the more formalistic approach of simply looking at whether the proceeding itself was civil/administrative or criminal. *Id.* If a sanction was imposed in a civil/administrative proceeding, the sanction was not punishment under the Double Jeopardy Clause. *Id.*

■ However, since *Crandall,* the United States Supreme Court has disavowed that approach and recognized that "a civil as well as a criminal sanction constitutes punishment when the sanction ... serves the goals of punishment," which are retribution and deterrence. *United States v. Halper,* 490 U.S.

435, 448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989); *see also Department of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1946, 128 L.Ed.2d 767 (1994) (stating "labels do not control in a double jeopardy inquiry"). *Halper* held that " ' "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." ' "[2] *Davis,* 903 P.2d at 947 (quoting *Austin v. United States,* —— U.S. ——, ——, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993) (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902)).

■ Thus, to determine whether the administrative license suspension scheme at issue is punishment for double jeopardy purposes, we must perform " 'a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve.' " *Davis,* 903 P.2d at 947 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901). We focus on "no single 'key' factor," but examine the "totality of the circumstances," recognizing that "the specific analysis that applies to determine whether a sanction constitutes punishment within the meaning of the double jeopardy clause varies depending upon the sanction." *Baldwin v. Department of Motor Vehicles,* 35 Cal.App.4th 1630, 42 Cal.Rptr.2d 422, 430 (Cal.Ct.App.1995) (citing *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948). Therefore, in the context of an administrative license suspension, we do not strictly apply the Supreme Court's analyses from *Halper,* 490 U.S. at 448–52, 109 S.Ct. at 1902–04 (monetary sanction), *Austin,* —— U.S. at ——–——, 113 S.Ct. at 2806–12 (civil forfeiture), and *Kurth Ranch,* —— U.S.

---

1. The State conceded at oral argument that this case involved separate proceedings arising from the same offense.

2. Defendants urge us to contemplate the purpose of the license suspensions in terms of effect. They argue the *effect* of a potential suspension is to deter licensees from driving under the influence of alcohol; thus, a suspension meets a goal of punishment. As an aside, we note that this "deterrent effect" apparently did not work on the particular licensees in this case. In any event,

whether a specific sanction constitutes punishment is not decided from the defendant's viewpoint. *United States v. Halper,* 490 U.S. 435, 447 n. 7, 109 S.Ct. 1892, 1901 n. 7, 104 L.Ed.2d 487 (1989); *State v. Davis,* 903 P.2d 940, 947 n. 12 (Utah App.1995) "[F]or the defendant[,] even remedial sanctions carry the sting of punishment." *Halper,* 490 U.S. at 444 n. 7, 109 S.Ct. at 1901 n. 7. Accordingly, our analysis need not consider the incidental deterrent effect license suspensions may have on drivers.

at ——, 114 S.Ct. at 1948 (drug tax).[3] *See Baldwin,* 42 Cal.Rptr.2d at 429–30. Instead, we fashion an analysis informed by those cases, yet suited to the civil sanction at issue. *See id.; State v. Higa,* 897 P.2d 928, 933 (Haw.1995); *State v. Jones,* 340 Md. 235, 666 A.2d 128, 134 (1995); *State ex rel. Schwartz v. Kennedy,* 904 P.2d 1044, 1055 (N.M.1995).

Considering *Halper, Austin,* and *Kurth Ranch,* together with myriad other state cases applying their principles in the context of administrative driver's license suspensions for DUI, we proceed as follows: We first place the statutory scheme at issue in its historical context, examining past uses of license suspensions to determine if their purposes have been perceived to be punitive or nonpunitive. *See Austin,* —— U.S. at ——, 113 S.Ct. at 2812; *State v. Zerkel,* 900 P.2d 744, 751 (Alaska Ct.App.1995); *Jones,* 666 A.2d at 135; *Davis,* 903 P.2d at 948. Then, we review the statutory scheme itself for overall purpose and legislative intent. *Zerkel,* 900 P.2d at 751; *State v. Savard,* 659 A.2d 1265, 1268 (Me.1995); *Jones,* 666 A.2d at 135; *Kennedy,* 904 P.2d at 1055–56; *State v. Strong,* 158 Vt. 56, 605 A.2d 510, 513 (1992).

### Historical Context

In determining that administrative driver's license suspensions for DUI violations have traditionally been viewed as "remedial" or protective—not punitive—we find support in (1) prior pronouncements of the United States Supreme Court, the Utah Supreme Court, *see City of Cleveland v. Miller,* 68 Ohio Misc.2d 52, 646 N.E.2d 1213, 1216 (1995); *cf. Davis,* 903 P.2d at 945 (using state supreme court authority to label civil forfeiture punitive), and other state courts; and (2) analogy to other licensing schemes, *see Savard,* 659 A.2d at 1268.

◼ As far back as 1938, the United States Supreme Court stated, "One [sanction] which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Certainly a state-issued driver's license is a "privilege voluntarily granted." *State v. Fox,* No. MV94315260, 1995 WL 559000, at *3 (Conn.Super.Ct. Sept. 13, 1995); *Nolen v. State,* 218 Ga.App. 819, 463 S.E.2d 504, 507 (1995); *Johnson v. State,* 95 Md.App. 561, 622 A.2d 199, 205 (1993); *Savard,* 659 A.2d at 1267; *State v. Young,* 3 Neb.App. 539, 530 N.W.2d 269, 278 (1995); *cf.* Utah Code Ann. § 53–3–207(1)(a) (1994). Thus, revocation or suspension of a driver's license has traditionally been outside the Supreme Court's notion of punishment under the Double Jeopardy Clause.

◼ Further, the Utah Supreme Court long ago declared, "The purpose of this administrative procedure is not to punish the inebriated drivers; such persons are subject to separate criminal prosecution for the purpose of punishment. The administrative revocation proceedings are to protect the public, not to punish individual drivers." *Ballard v. State,* 595 P.2d 1302, 1305 (Utah 1979). Other states agree that the historical purpose of driver's license suspension after a DUI arrest is remedial—i.e., to protect the public from unsafe drivers—not punitive. *See, e.g., State v. Hanson,* 532 N.W.2d 598, 601 (Minn. Ct.App.1995).

Indeed, suspensions of various types of government-issued licenses generally serve

---

**3.** Defendants note that a feature of the Montana drug tax in *Kurth Ranch* which led to its designation as punishment was that the tax was assessed only of those who had committed the crime of possessing marijuana. *See Department of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1947, 128 L.Ed.2d 767 (1994). The Court found that to be " 'significant of penal and prohibitory intent.' " *Id.* (citation omitted). Defendants argue that "[t]he administrative suspension of a driver's license in Utah is similarly conditioned on the commission of the crime of DUI" and, thus, should be designated punishment just as the drug tax was. To the contrary, we have found many other reasons for driver's license suspensions in Utah. For instance, drivers can have their licenses suspended for not observing the conditions of a special restricted license, Utah Code Ann. § 53–3–208(3) (1994); for two charges of reckless driving within 12 months, *id.* § 53–3–220(1)(a)(viii); for mental or physical unfitness, *id.* § 53–3–221(1)(c); or for exceeding a maximum number of points assigned for traffic violations, *id.* § 53–3–221(4). From our review of these sections and others, it is obvious that suspensions are allowed or required, not just on criminal grounds, but on many other grounds as well. The overall controlling theme of these sections is public protection.

the remedial purpose of protecting the public. *See Jones,* 666 A.2d at 136. For instance, aside from drivers, Utah requires licensure of those practicing in a broad range of professions with the potential to injure consumers through malfeasance or negligence. Utah Code Ann. §§ 58–1–101 to 58–66–608 (1994 & Supp.1995) (ranging from architects and accountants to physicians and social workers). Likewise, certain kinds of businesses that could be harmful to public health may not be operated without licenses. *See, e.g., id.* § 2–1–16 (1995) (airport); *id.* § 4–11–4 (bee raising); *id.* § 4–32–4 (slaughterhouse). To ensure public protection, licensees typically must show their capability by meeting certain standards such as reaching a specific level of education or passing an examination before receiving a license. *See generally id.* §§ 58–1–101 to 58–66–608 (1994 & Supp.1995) (listing requirements for each type of professional or occupational license).

■■■ Traditionally, the ultimate goal of licensing schemes is to prevent unethical or inept persons from participating in an activity which requires a license. *See Jones,* 666 A.2d at 136. In revoking a conditionally issued license for noncompliance with the conditions of its issuance, the state simply means to guard the public from those who are unfit for the regulated activity. *Kennedy,* 904 P.2d at 1056. Accordingly, "courts have repeatedly held that revocation [or suspension] of a license for violation of the laws governing the licensed activity or occupation is not 'punishment,' but rather is remedial insofar as it serves the interests of enforcing regulatory compliance and protecting the public." *Id.; see also People v. Marmon,* 903 P.2d 651, 655 (Colo.1995) (holding disciplinary action against attorney was to protect public, not to punish wrongdoer); *Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 889 P.2d 705, 707, 711 (1995) (concluding medical license suspension after doctor convicted of sexual abuse protected public from unfit doctor, serving legitimate nonpunitive governmental objectives); *Cocco v. Maryland Comm'n on Medical Discipline,* 39 Md. App. 170, 384 A.2d 766, 768–69 (1978) ("[D]isciplinary proceedings against a professional have the unique purpose of protecting the public from the results of a professional's improper conduct, incompetence or unscrupulous practices.").

Based on past declarations by the United States Supreme Court, Utah Supreme Court, and other state courts, along with the traditional notion that licensing schemes in general are designed for public protection, we conclude that administrative driver's license suspension procedures are historically regarded not to be punishment under the Double Jeopardy Clause. Next, we consider the purpose of the specific statute at issue.

### Specific Statutory Purpose

■■■ The Uniform Driver License Act (the Act), Utah Code Ann. §§ 53–3–101 to – 909 (1994 & Supp.1995), is designed to promote public safety. Indeed, the Act is found in Title 53, designated "Public Safety." And, throughout the Act, references to public safety abound. For instance, the Driver License Division is directed to "make rules ... for examining applicants for a license, as necessary for the safety and welfare of the traveling public," *id.* § 53–3–104(1)(a)(i), and test a license applicant's "physical and mental abilities ... to determine the applicant's fitness to drive a motor vehicle safely on the highways," *id.* § 53–3–206(1)(e), and is authorized to restrict a licensee "as it determines appropriate to assure safe driving of a motor vehicle by the licensee," *id.* § 53–3–208(1). In addition, no reference to the goals of punishment exists in the sections of the Act that outline causes and purposes of license revocations and suspensions. *See id.* §§ 53–3–208, 53–3–209, 53–3–220 to –223.

■■■ As for the specific sections governing the type of license suspensions in this case, *id.* §§ 53–3–222 to –223, the Legislature has explicitly stated its purpose:

> The Legislature finds that a primary purpose of this title relating to suspension or revocation of a person's license or privilege to drive a motor vehicle for driving with a blood alcohol content above a certain level or while under the influence of alcohol ... is protecting persons on highways by quickly removing from the highways those persons who have shown they are safety hazards.

*Id.* § 53–3–222. No other purpose is stated or implied.[4] The Act also allows suspension or revocation of a driver's license for other actions, stating the same purpose of public protection. *See id.* § 53–3–221(1); *supra* note 2. We thus conclude that the statutory scheme's purpose and intent is remedial—it is meant to protect the public, not to punish the DUI offender.[5]

## CONCLUSION

Having determined (1) the historical purpose of licensing programs is to safeguard public health and safety and (2) the specific purpose of the statutory scheme at issue is remedial or protective, we hold administrative driver's license suspensions for DUI do not constitute punishment for double jeopardy purposes. Thus, the Double Jeopardy Clause does not preclude the State from suspending a DUI arrestee's license under Section 53–3–223 and later bringing criminal DUI charges against that arrestee. The trial court was correct to deny defendants' motions to dismiss their DUI prosecutions. Accordingly, we affirm and remand for further proceedings consistent with this opinion.

DAVIS, Associate P.J., concur.

BENCH, Judge, concurring in result:

This case and the recent case of *State v. Davis*, 903 P.2d 940 (Utah App.1995) have incongruous results. We cannot, in good conscience, hold that the State's revocation of a driver's license (in a DUI case) is not at least partially punitive after having held that the State's seizure of a vehicle (in a drug case) is partially punitive. Under the proper analysis, however, I agree that this case must be affirmed.

The underlying problem is that the main opinion starts with a false premise. Contrary to the understanding of the main opinion, the protections of double jeopardy are

4. Defendants argue that because the above language states, *"a* primary purpose," as opposed to *"the* primary purpose," there may be other deterrent or retributive purposes of the legislation not stated by the Legislature. However, defendants concede in footnote seven of their brief that they have been unable to identify any other purpose, even after reviewing legislative history. We do not believe the Legislature's use of "a," instead of "the," should change our result.

First, a statute is presumed to be constitutional. *See Lander v. Industrial Comm'n,* 894 P.2d 552, 555 (Utah App.1995). The statutory scheme here is thus presumed to create no double jeopardy problem. The defendants bear the burden of proving it does. *See id.* As we have mentioned, defendants have not identified any other express purpose for this statute than to enhance public protection. Thus, defendants have not met their burden.

Second, legislative intent is only one factor in our analysis. *See supra.* We do not regard the use of "a" instead of "the" here to be particularly significant. We simply weigh it along with other considerations as part of the totality of the circumstances.

Finally, we find it persuasive that the Legislature has recently amended the language to state *"the* primary purpose," not *"a* primary purpose." *See* Utah Code Ann. § 53–3–222 (Supp.1995). Although the amended language does not control this case, it does intimate that the Legislature has become aware that the earlier language could be misconstrued as defendants have done. Consequently, the Legislature has merely clarified the statute's purpose.

5. Our determination places us in good company. In overwhelming numbers, using a similar analysis, other states also interpret these types of statutes to primarily afford public protection, not to punish the DUI offender. *See, e.g., State v. Zerkel,* 900 P.2d 744, 758 (Alaska Ct.App.1995); *State v. Nichols,* 169 Ariz. 409, 819 P.2d 995, 998 (1991); *Baldwin v. Department of Motor Vehicles,* 35 Cal.App.4th 1630, 42 Cal.Rptr.2d 422, 429 (1995); *Ellis v. Pierce,* 230 Cal.App.3d 1557, 282 Cal.Rptr. 93, 95 (1991); *State v. Fox,* No. MV94315260, 1995 WL 559000, at *2 (Conn.Super.Ct. Sept. 13, 1995); *State v. Schwander,* Nos. IN94–08–1350 to IN94–08–1351, IN94–08–1352, IN94–08–1353, IN94–08–1354, 1995 WL 413248, at *3–4 (Del.Super.Ct. June 15, 1995); *Davidson v. MacKinnon,* 656 So.2d 223, 225 (Fla.Dist.Ct. App.1995); *Jackson v. State,* 218 Ga.App. 677, 462 S.E.2d 802, 803 (1995); *State v. Higa,* 897 P.2d 928, 933 (Haw.1995); *State v. Maze,* 16 Kan.App.2d 527, 825 P.2d 1169, 1174 (1992); *State v. Savard,* 659 A.2d 1265, 1267–68 (Me. 1995); *State v. Jones,* 340 Md. 235, 666 A.2d 128, 143 (1995); *State v. Hanson,* 532 N.W.2d 598, 601 (Minn.Ct.App.1995); *State v. Young,* 3 Neb. App. 539, 530 N.W.2d 269, 278 (1995); *State ex rel. Schwartz v. Kennedy,* 904 P.2d 1044, 1060 (N.M.1995); *People v. Frank,* 631 N.Y.S.2d 1014, 1017 (N.Y.Crim.Ct.1995); *State v. Zimmerman,* 539 N.W.2d 49, 50 (N.D.1995); *State v. Toriello,* 71 Ohio Misc.2d 81, 654 N.E.2d 1075, 1078 (Summit County Ohio Mun.Ct.1995); *State v. Strong,* 158 Vt. 56, 605 A.2d 510, 513 (1992); *Tench v. Commonwealth,* 21 Va.App. 200, 462 S.E.2d 922, 923–24 (1995). *But see State v. Ackrouche,* 70 Ohio Misc.2d 34, 650 N.E.2d 535, 538–39 (Franklin County Ohio Mun.Ct.1995).

not triggered when the sanctions involved contain any attribute of punishment, no matter how minor. Double jeopardy becomes an issue only where the sanctions are wholly, and not just partially, punitive in nature. *United States v. Halper,* 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). When analyzed under the correct legal standard, it can easily be said in this case that principles of double jeopardy are not violated because the revocation of a driver's license is not wholly punitive.

The origin of the false premise is the presence of potentially inconsistent language in *Halper.* In addressing what constitutes punishment in *Halper,* the Supreme Court discussed sanctions that are partially punitive and other sanctions that are wholly punitive. The holding in *Halper,* however, is that to constitute punishment for double jeopardy purposes, the sanctions must be wholly punitive.

> *We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.*

*Id.* (emphasis added).

This same standard was tracked in another double jeopardy case, *Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In that case, the Supreme Court cited and followed the above-quoted language of *Halper. Id.* at ——, 114 S.Ct. at 1945. Although there is confusion in several jurisdictions, the United States Supreme Court has consistently stated that double jeopardy under the federal constitution applies only when the civil sanction is wholly punitive. "Our double jeopardy cases make clear that a civil sanction will be considered punishment to the extent that it serves only the purposes of retribution and deterrence, as opposed to furthering any nonpunitive objective." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1953 (O'Connor, J., dissenting) (citations omitted).

The confusion comes because there is a different standard for analyzing an excessive fines challenge under the Eighth Amendment. One definition of punishment mentioned in *Halper,* but not followed as holding, was as follows: "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term." *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902. This language was tracked and followed in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), a case brought under the Excessive Fines Clause of the Eighth Amendment. In *Austin,* the Supreme Court held that the excessive fines provision is triggered even when the civil sanction is only partially punitive. *Id.* at ——, 113 S.Ct. at 2806 (citing *Halper* ).

Thus, when *Halper, Kurth Ranch,* and *Austin,* are read together, the standards are clear. Double jeopardy under the Fifth Amendment applies only when the civil sanction is "wholly punitive" in nature. On the other hand, excessive fines limitations under the Eighth Amendment apply when the civil sanction is at least "partially punitive" in nature.

By confusing these two standards, the main opinion has made this case unnecessarily difficult and unfairly inconsistent with *Davis.* Because revocation of a driver's license is not wholly punitive in nature, double jeopardy does not apply. The main opinion therefore reaches the right result, but follows a faulty analysis.

For the foregoing reasons, I concur only in the result.