STATE of Utah, Plaintiff and Appellee,

v.

Boyd Lee PREECE, Defendant
and Appellant.

No. 971576–CA

Court of Appeals of Utah.

Dec. 17, 1998.

Gregory N. Skabelund, Logan, for Appellant.

Tony C. Baird, Cache County Attorney's Office, Logan, for Appellee.

Before Judges DAVIS, JACKSON, and ORME.

## OPINION

ORME, Judge:

Defendant Boyd Lee Preece appeals his bench trial convictions for driving with a breath alcohol concentration greater than .08 grams, a class B misdemeanor, in violation of Utah Code Ann. § 41–6–44(2)(a)(i) (Supp. 1998);[1] possession of an open alcoholic beverage container in a motor vehicle, a class C misdemeanor, in violation of Utah Code Ann. § 41–6–44.20(2) (1993); and unsafe lane change, a class C misdemeanor, in violation of Utah Code Ann. § 41–6–69(1)(a) (1993). We affirm in part, reverse in part, and remand.

## BACKGROUND

In reviewing the denial of a motion to suppress, we "recite the facts in a light most favorable to the trial court's findings." *State v. Tetmyer*, 947 P.2d 1157, 1158 (Utah Ct. App.1997). On March 10, 1997, sometime after 10:00 p.m., Utah Highway Patrol Trooper Troy Denney was driving west on State Route 142 near Richmond, Utah. Den-

ney noticed a truck, with its left-hand blinker on, driving the opposite direction at about fifteen miles per hour below the speed limit. Denney turned his car around and began to follow the truck, which he later would learn had Preece at the wheel. After driving about a quarter mile with his left blinker on, Preece turned the blinker off for a few seconds, then back on, and then made a left-hand turn.

Preece continued down the road onto which he had just turned, proceeding at twenty to twenty-five miles per hour although the speed limit was either fifty or fifty-five miles per hour. Denney also turned left and continued to follow Preece. Denney had followed Preece from a distance of three to four car lengths for about one quarter of a mile when he saw Preece leave the road, come to nearly a complete stop, and then come back onto the road without signaling.

At trial, Preece and his son, Todd Earl Preece, who was a passenger in the truck, admitted they were drinking beer, while driving slowly so as to view property they were considering purchasing.[2] Before Denney pulled them over, Preece and his son had each consumed between three and four beers. Preece and Todd testified that Preece was a slow, courteous driver who, upon seeing a car following close behind and not knowing it was driven by a law enforcement officer, pulled to the right of the road to let the car pass. However, when he pulled to the right, Preece left the road and nearly stopped before reentering his lane of travel. During these maneuvers, Preece failed to use his turn signal.

Just after 10:00 p.m., upon witnessing Preece's exit and reentry with no signal, Denney initiated a traffic stop and approached Preece's truck. As Denney reached the truck, he could smell alcohol and noticed a beer can on the seat between Preece and Todd and a case of beer next to Todd's feet. When Denny asked, Preece

---

1. As a convenience to the reader, and because the statutory provisions in effect at the relevant times do not materially differ from those currently in effect, we cite to the most recent statutory codifications unless otherwise indicated.

2. No explanation was offered for why they chose to view the property in total darkness.

confirmed that he had been drinking. Denney asked Preece to exit the truck to perform a series of sobriety tests. Denney smelled the odor of alcohol emanating from Preece as he exited the truck.

During the sobriety tests, Denney noticed that Preece's balance was poor, concluded he was too impaired to safely drive his truck, and placed him under arrest. After these tests, Denney took Preece to the local jail where Preece was given an intoxilyzer test. That test registered a breath alcohol level of .101 grams, .021 higher than the legal limit of .08 grams. There was some discrepancy in the evidence, however, about the amount of time that elapsed between the traffic stop and the intoxilyzer test. That is, the intoxilyzer test report stated the elapsed time was seventy minutes, but at one point Denney testified the elapsed time was as much as ninety minutes. Denney also testified, however, that he stopped Preece at 10:03 p.m. and gave the test at 11:44, thereby indicating an elapsed time of one-hundred-one minutes. The trial court made no factual findings resolving this discrepancy.

On April 21, 1997, the State filed an information charging Preece with four counts: 1) driving while under the influence of alcohol, in violation of Utah Code Ann. § 41-6-44(2)(a)(ii) (Supp.1998); 2) driving with a breath/blood alcohol concentration greater than .08 grams, in violation of Utah Code Ann. § 41-6-44(2)(a)(i) (Supp.1998); 3) possession of an open alcoholic beverage container in a motor vehicle, in violation of Utah Code Ann. § 41-6-44.20 (1993); and 4) unsafe lane change, in violation of Utah Code Ann. § 41-6-69(1)(a) (1993).

Regarding the fourth count, unsafe lane change, the information specified that Preece violated section 41-6-69(1)(a) and described the acts constituting the offense as follows: "That the said Defendant, on the day and place aforesaid, driver of a vehicle, did move right or left upon a roadway or change lanes, when such movement could not be made with reasonable safety." Preece neither objected to the information before, during, or after trial, nor did he request a bill of particulars. Preece's only comment regarding the suffi-

ciency of the information was during his counsel's closing argument:

> Your honor, as the Court will recall at the suppression hearing we had some time ago and the basis of the memorandum, the memorandum of the prosecution provided and stated that the purpose of the stop was due to the fact that the defendant in this particular matter did not signal. The charges that have been brought against the defendant in this particular occasion is an ... unsafe lane change. Well there's no testimony here today, Your Honor, that there was a lane change. There's no testimony today that the, that the alleged turning was unsafe. There was no evidence whatsoever presented. In fact as I stated before, the prosecution based [the charge] upon [the fact that] an [ ]appropriate signal [was] not given. Well that's not the, that's not the charge that we're given in the Information.

Preece filed a motion to suppress, arguing the stop and arrest were unconstitutional and requesting that the trial court suppress all evidence obtained as a result thereof, including chemical test evidence. On May 21, 1997, the trial court held a hearing on the motion, where Preece's counsel advised the court his challenge was limited to the legality of the stop.[3] After hearing Trooper Denney's testimony, the trial court concluded the stop was a legitimate seizure under the Fourth Amendment because Denney had a reasonable articulable suspicion of drunken driving based on all the circumstances, including Preece driving down the road with his turn signal on, only later to leave and reenter the road without signaling, and on his driving in a rural area approximately thirty miles per hour below the speed limit. Consequently, the court denied Preece's motion to suppress.

At his subsequent bench trial, Preece attempted to introduce testimony from Trooper Denney regarding the absorptive and metabolic rates of alcohol. Denney testified that, under the "Widmark" formula, alcohol absorbs into the body at a rate of .15 per hour. Denney also testified that ninety min-

---

3. Similarly, on appeal Preece raises no issue for review concerning the arrest.

utes elapsed between the stop and the intoxilyzer test and that, under the Widmark formula, if Preece's alcohol level was rising, the level would have risen .0225 during this time. However, when Preece asked Denney if Preece's alcohol level, as of the time of the stop, would therefore have been below .08, i.e., upon subtracting the .0225 post-stop absorption from the .101 intoxilyzer result, the State objected. The prosecutor argued that an intoxilyzer result above .08, taken within two hours of a stop, gives rise to a conclusive presumption that the defendant had an alcohol level above .08 when driving. The trial court agreed and sustained the objection, concluding that "[i]t's a conclusive presumption under the statute." Preece did not take exception to the ruling, and his counsel said: "That's right."

The court found Preece guilty of count two, driving with an alcohol level above .08, because the intoxilyzer test showed a level of .101 within two hours of the time Denney stopped Preece. However, the court found Preece not guilty of count one, driving under the influence of alcohol to the extent that he was incapable of safely operating a vehicle. The trial court also found Preece guilty of the third and fourth counts, open container and unsafe lane change, respectively. The court later sentenced Preece to $1310.00 in fines and 180 days in jail, with all but two of the jail days suspended.

## ISSUES AND STANDARDS OF REVIEW

■ Preece raises three issues for review. First, he challenges the trial court's denial of his motion to suppress evidence arising from the traffic stop, arguing that Trooper Denney lacked the reasonable articulable suspicion required under the Fourth Amendment. We review the trial court's findings of fact underlying its denial of a motion to suppress for clear error. *See State v. Humphrey*, 937 P.2d 137, 140–41 (Utah Ct.App.1997). Although we afford some " 'measure of discretion' " to the trial court's application of the standard, whether a set of facts supports a reasonable articulable suspi-

cion is a question of law that we review for correctness. *Id.* at 140 (quoting *State v. Pena*, 869 P.2d 932, 939 (Utah 1994)).

■ Second, Preece claims that the information filed against him provided insufficient notice to prepare his defense because, although it mentioned the section of the Utah Code he violated, it did not expressly recite that he failed to use a turn signal. Whether an information provides sufficient notice is a question of law. *See State v. Montoya*, 910 P.2d 441, 443 (Utah Ct.App.), *cert. denied*, 919 P.2d 1208 (Utah 1996). Accordingly, we review this question for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994). Preece alternatively argues that the evidence was insufficient to support a conviction for this offense as it was charged in the information. For reasons hereafter explained, our resolution of the primary issue forecloses this argument as well. *See infra* note 8.

■ Finally, Preece claims that the trial court erred in concluding that if an intoxilyzer test shows an alcohol level above .08 within two hours of a stop, it is conclusively presumed the defendant's level was above .08 when stopped, and in sustaining the State's objection to evidence suggesting Preece's level was below .08 when stopped. Whether a statute imposes a presumption is a question of statutory interpretation and, therefore, a question of law reviewed for correctness. *See Roosevelt City v. Nebeker*, 815 P.2d 738, 738–39 (Utah Ct.App.1991).

## ANALYSIS

### Legality of the Stop

Preece appeals the trial court's denial of his motion to suppress, arguing that Trooper Denney lacked a reasonable articulable suspicion of a crime upon which to base his stop of the truck and inquiry of its driver.[4] "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d

---

4. Because Preece argues only that the stop was not justified, we need not address whether the detention was reasonably related to the scope of

the stop. *See State v. Rodriguez-Lopi*, 954 P.2d 1290, 1293 (Utah Ct.App.1998); *State v. Tetmyer*, 947 P.2d 1157, 1159 (Utah Ct.App.1997).

660 (1979). However, "a police officer is constitutionally justified in stopping a vehicle if the stop is 'incident to a traffic violation committed in the officers' presence.'" *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994) (quoting *State v. Talbot,* 792 P.2d 489, 491 (Utah Ct.App.1990)). *Accord United States v. Parker,* 72 F.3d 1444, 1449 (10th Cir.1995) (holding that because defendants committed traffic violations under Utah Code Ann. §§ 41–6–61(1) and 41–6–69(1)(a), officer had reasonable articulable suspicion to stop defendants).

■ Trooper Denney testified that he saw Preece pull out of the lane to the right side of the road and then reenter without using a turn signal. It is unlawful to "move right or left upon a roadway or change lanes until the movement can be made with reasonable safety *and an appropriate signal has been given.*" Utah Code Ann. § 41–6–69(1)(a) (1993) (emphasis added). Therefore, because he witnessed Preece's traffic violation, Denney had probable cause—more than the requisite reasonable articulable suspicion—to stop Preece. *See Lopez,* 873 P.2d at 1132. Accordingly, the stop did not violate Preece's Fourth Amendment rights, and the trial court did not err in denying Preece's motion to suppress.[5]

### Unsafe Lane Change

Preece argues that the information did not give adequate notice because it did not describe his conduct as exiting and reentering his lane of travel *without signaling.* He makes the related argument that the evidence was insufficient to support his conviction for unsafe lane change *as that offense was defined in the information.*

Rule 4 requires an information to "charge the offense for which the defendant is being prosecuted by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge." Utah R.Crim. P. 4(b). "'[W]hat the defendant is entitled to is an information which sufficiently informs him to enable him to understand the charge against him and to prepare a defense. If it fulfills that requirement, it is sufficient. It need not serve the purpose of discovery....'" *State v. Snyder,* 932 P.2d 120, 127 (Utah Ct.App. 1997) (quoting *State v. Smathers,* 602 P.2d 708, 710 (Utah 1979)).

In *State v. Smathers,* 602 P.2d 708 (Utah 1979), the Utah Supreme Court rejected a similar challenge. There, a jury convicted the defendant of aggravated sexual assault. *See id.* at 709. Under the statute then in effect, a person committed aggravated sexual assault when, during a rape, 1) the actor either causes serious bodily injury to the victim, or 2) the actor compels submission by "threat of kidnapping, death, or serious bodily injury to be inflicted imminently on any person." Utah Code Ann. § 76–5–405(1) (1978). In describing the defendant's unlawful conduct, the information stated that "Smathers raped [the victim] by the threat of death and serious bodily injury." *Smathers,* 602 P.2d at 710. The defendant argued that the information was defective because it failed to expressly allege that he either caused serious bodily injury or that the victim was the object of the alleged threat. *See id.* at 709. Although the information omitted part of the required showing under the statute, the Supreme Court concluded that "the information was sufficient to meet the requirements of our statute and applicable decisional law in apprising the defendant of the charge he was obliged to meet." *Id.* at 710.

---

5. Contrary to Preece's assertion, it is irrelevant that Trooper Denney did not immediately cite him for any traffic violations. In *Lopez,* the Utah Supreme Court rejected the pretext doctrine and held that an officer witnessing a traffic violation may constitutionally stop the driver notwithstanding "the officer's motivations or suspicions that are unrelated to the traffic offense." *Lopez,* 873 P.2d at 1135. *See also Parker,* 72 F.3d at 1449 ("It is therefore irrelevant to the validity of the initial stop whether [the trooper] may have had subjective motivations for the stop."). The absence of immediate citation is particularly irrelevant where the officer effects an arrest, and an information containing four separate counts, including one for the illegal lane change, is subsequently issued. This would surely appear to be a more efficient way to proceed when an arrest is made than the alternative of dealing with some of the offenses by citation and others by information.

Likewise, in *Snyder*, we held that an information was not defective where it specifically provided the offense's statutory name and the section proscribing the relevant conduct. *See Snyder*, 932 P.2d at 127–28. *See also State v. Courtney*, 10 Utah 2d 200, 202, 350 P.2d 619, 621 (1960) ("[W]hile it is desirable that the information accurately charge an offender, mere failure to use the exact words of the statute is not fatal.").

The information at issue here provided in part:

| | |
|---|---|
| **CRIME:** | Unsafe Lane Change |
| **IN VIOLATION OF:** | Section 41–6–69(1)(a) U.C.A.1953, as amended |
| **CLASSIFICATION:** | Class C Misdemeanor |
| **ON OR ABOUT:** | March 10, 1997 |

Thus, the information names the offense and cites the particular statutory subsection—a single paragraph, only thirty-four words in length—that describes a single offense.[6] By providing the name of the offense and the specific Utah Code subsection under which Preece was charged, the information gave Preece sufficient notice of the conduct giving rise to the charge so as to allow him to adequately prepare his defense.

■ Accordingly, we hold that Preece had sufficient notice of his charged conduct, notwithstanding the information's incomplete quotation of the statute.[7] Given that the statute was accurately cited in the information, inclusion of the statutory language was wholly gratuitous and does not excuse defendant from familiarizing himself with the actual language of the statute under which he had been charged. As in *Smathers*, a small omission of the statute's language—i.e., the phrase "and an appropriate signal has been given"—does not render the information defective.[8]

*Conclusive Presumption*

■ Preece is correct that the trial court erred in sustaining the State's objection to evidence on the absorptive and metabolic rates of alcohol. The trial court concluded that, under Utah Code Ann. § 41–6–44(2)(a)(i) (Supp.1998), an intoxilyzer test taken within two hours of the stop and showing an alcohol level above .08 triggers a conclusive presumption that Preece had an alcohol level above .08 at the time of the stop. Not only is there no such *conclusive* presumption, there is no such presumption of any kind. *See City of Orem v. Crandall*, 760 P.2d 920, 923–24 (Utah Ct.App.1988). Indeed, in *Crandall*, we concluded that section 41–6–44(2), then codified at section 41–6–44(1), was constitutional precisely because it carried no presumption. *See* 760 P.2d at 923–24. On the contrary, "the defendant [is allowed] to challenge the accuracy of the test on any relevant ground." *Id.* at 924. The State concedes the trial court erred but argues that Preece did not preserve the issue for appeal and that, even if he did, the error was harmless.

For Preece to have preserved the issue for appeal, he must have raised the claim such that the trial court had "an opportunity to rule on the issue" and make an adequate record for appellate review. *State v. Emmett*, 839 P.2d 781, 783–84 (Utah 1992). Under Rule 103 of the Utah Rules of Evidence, Preece must also have proffered the excluded testimony so that "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Utah R. Evid. 103(a)(2).

■ When the State objected to Denney's testimony on alcohol absorption rates, Preece

---

**6.** The subsection provides, in its entirety: "A person may not turn a vehicle or move right or left upon a roadway or change lanes until the movement can be made with reasonable safety and an appropriate signal has been given." Utah Code Ann. § 41–6–69(1)(a) (1993). This is not a situation where an information merely cites a section which contains many different crimes.

**7.** The information provided: "That the said Defendant, on the day and place aforesaid, driver of a vehicle, did move right or left upon a roadway or change lanes, when such movement could not be made with reasonable safety."

**8.** Preece argues he was prejudiced because the trial court convicted him based on evidence that he left and reentered his lane of travel without signaling, while the information alleged an offense premised on "reasonable safety," without regard to whether a turn signal was used. Our determination that the information adequately advised Preece of the statute under which he was charged, coupled with evidence in the record supporting both prongs of the statutorily defined offense, forecloses this argument as well.

did not make a formal offer of proof. Just before the objection, however, Denney testified that the intoxilyzer showed an alcohol level of .101; that one and one-half hours elapsed between the stop and the test; and that, under the "Widmark" formula, if Preece's alcohol level was increasing (a safe bet since Preece was drinking moments before the stop), his alcohol level would have risen .0225 between the stop and the test. When Preece asked Denney whether Preece's alcohol level would have been under .08 after subtracting the .0225 post-stop absorption from the .101 test result, the State objected. In context, it is clear Preece intended to show that he had an alcohol level below .08 when driving and that the high intoxilyzer result was due to alcohol absorbed after the stop but before the test was administered. Given his prior testimony, by simple mathematical operation [9] it is clear that Denney would have answered affirmatively. Thus, the purpose of the testimony—indeed, the very answer the witness likely would have given—was abundantly clear from the context.[10] Accordingly, a formal offer of proof was unnecessary, and Preece has preserved this issue for appeal.[11]

Finally, the State contends the trial court's error was harmless. "Harmless errors are 'errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *State v. Villarreal*, 857 P.2d 949, 957–58 (Utah Ct.App.1993) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)), *aff'd*,

889 P.2d 419 (Utah 1995). "Put differently, an error is harmful only if the likelihood of a different outcome is sufficiently high that it undermines our confidence in the verdict." *State v. Robertson*, 932 P.2d 1219, 1227 (Utah 1997). We conclude that without the trial court's error, and with Denney's probable answer had he been permitted to respond, the likelihood that the court would have acquitted Preece on the charge of driving with an alcohol level above .08 is sufficiently high that it undermines our confidence in the court's judgment on this charge. Therefore, we cannot say the error was harmless.

Section 41–6–44(2)(a)(i) of the Utah Code "prohibits driving or controlling a vehicle with a blood-alcohol level of .08 [grams] or more, not driving or controlling a vehicle when a test shows a level of .08 [grams] or more." *Crandall*, 760 P.2d at 924. Accordingly, "the defendant [is allowed] to challenge the accuracy of the test on any relevant ground." *Id.* By erroneously invoking a conclusive presumption, the trial court denied Preece the ability to challenge the test's accuracy on the ground that he absorbed alcohol after he stopped driving. Depending on the view it took of other evidence, the court might well have acquitted Preece had it not held an incorrect view about the matter being conclusively resolved by statutory presumption and had it heard Denney's answer. For example, Denney testified that under the Widmark formula, the human body absorbs alcohol at a rate of .015 grams per hour. Although the intoxilyzer printout showed a gap of seventy minutes,[12] Denney testified to a gap of ninety minutes, and his testimony

---

**9.** I.e., .101—.0225 = .0785.

**10.** We cannot overemphasize the high degree to which the purpose of the evidence, and the evidence itself, was clear in this case from the context. Only in situations of such obvious clarity will a party have preserved an issue for appeal without the offer of proof required in Rule 103 of the Utah Rules of Evidence. The safer course for an attorney faced with the exclusion of evidence will always be to formally proffer what the testimony would have been had the court permitted it.

**11.** The State also argues that Preece failed to preserve the issue because he did not take exception to the court's ruling. However, "[e]xceptions to rulings or orders of the court are unnec-

essary." Utah R.Crim. P. 20. *See also Emmett*, 839 P.2d at 783 ("We have never required criminal defendants who have properly presented a claim to take exception to a trial court's erroneous ruling in order to preserve the issue on appeal."). Also, we find little significance in Preece's counsel's statement: "That's right." This comment is entirely consistent with counsel merely accepting the trial court's ruling without necessarily endorsing its correctness, and is simply too thin a reed on which to premise a definitive waiver of appellant's right to contest the ruling.

**12.** A period of 70 minutes would suggest Preece had an alcohol level of .0835 when stopped by Denney: the absorption rate of .015 per hour divided by 60 minutes equals an absorption rate

regarding the times at which he stopped and tested Preece actually shows a gap of one-hundred-one minutes. Applying the Widmark formula to either of these longer time periods shows Preece's alcohol level could indeed have been below .08 at the time of the stop.[13]

Accordingly, there is a reasonable likelihood of a different outcome absent the trial court's error and, therefore, the error was not harmless. Consequently, we reverse the conviction for driving with a blood/breath alcohol level above .08 and remand for a new trial on that charge or such other proceedings as may now be appropriate.

### CONCLUSION

We hold that because he witnessed Preece commit a traffic violation, Trooper Denney had probable cause—much less a reasonable articulable suspicion—to stop Preece and, therefore, the trial court did not err in denying Preece's motion to suppress. Further, we conclude the information adequately charged Preece with a lane-change violation even though it did not completely quote the language of the statute under which he was charged. However, the trial court erred in using a conclusive presumption to exclude Preece's alcohol absorption/metabolism evidence and finding Preece guilty under Utah Code Ann. § 41-6-44(2)(a)(i) (Supp.1998). Because Preece did not waive this error, and because the error was not harmless, we reverse his conviction on this count and remand for appropriate proceedings.

Affirmed in part, reversed in part, and remanded.

DAVIS, P.J., and JACKSON, J., concur.

---

of .00025 per minute; over 70 minutes, the total absorption would be .0175; subtracting .0175 from the .101 intoxilyzer test result shows a .0835 alcohol level at the time of the stop.

13. A period of 101 minutes suggests Preece had an alcohol level of .07575 when stopped by Denney: the .00025 absorption rate per minute over 101 minutes equals a total absorption of .02525; subtracting the .02525 from the .101 intoxilyzer result results in .07575 at the time of the stop.

Likewise, a ninety-minute gap indicates an alcohol level of .0785 at the time of the stop. *See supra* note 9 and accompanying text. The trial court may be hardpressed to reject Trooper Denney's sworn testimony about the time that elapsed between a stop he effected and an intoxilyzer test he oversaw in favor of an unattributed notation on a report memorializing a test which measures breath alcohol at a point in time rather than the elapse of time from one point to another.